Justin D. Santagata, Esq.
Attorney ID: 000822009
Kaufman Semeraro & Leibman LLP
Fort Lee Executive Park
Two Executive Drive, Suite 530
Fort Lee, New Jersey 07024
T: 201-947-8855
F: 201-947-2402
E: jsantagata@northjerseyattorneys.com
Attorneys for Plaintiffs

| | |
|---|---|
| LISA GRIFFIN, TIFFANY BURTON, ROSELLE ABLE, KAREN RENARD, <br><br> Plaintiffs, <br><br> v. <br><br> PSEG LONG ISLAND LLC, <br><br> Defendant. | UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK <br><br> CIVIL ACTION <br><br> 18-3046 <br><br> COMPLAINT FOR UNPAID OVERTIME AND FOR COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT AND FOR UNPAID OVERTIME UNDER THE NEW YORK WAGE/HOUR LAW |

Pursuant to Fed.R.Civ.P. 8, Plaintiffs allege as follows.

## INTRODUCTION

This is a complaint for unpaid overtime under the Fair Labor Standards Act ("**FLSA**") and the New York Wage/Hour Law ("**NY Wage Law**"). From approximately September 2017 through December 2017, Plaintiffs were employed by Defendant PSEG Long Island LLC ("**PSEG**") as "associate customer service representatives." For these three months of their employment, Plaintiffs were required to attend training courses at PSEG from 8:00am to 4:30pm ("**Scheduled Working Hours**"), with an hour lunch break and two fifteen-minute breaks per day

("**Training Period**"). Eventually, Plaintiffs were required to work one day a week answering customer service calls for PSEG during the Training Period.

During the Training Period, Plaintiffs were required to satisfactorily complete four exams to remain employed with PSEG. If an employee did not pass an exam, the employee could not continue the Training Period or remain employed. PSEG representatives constantly told Plaintiffs (and their classmates) that the only way to complete the Training Period was to study outside of Scheduled Working Hours. PSEG representatives encouraged Plaintiffs to form study groups outside of Scheduled Working Hours and even brought in "guest speakers" from prior training periods to explain the amount of studying required to satisfactorily complete the Training Period. PSEG representatives routinely assigned homework to Plaintiffs (and their classmates) for their training that had to be completed outside Scheduled Working Hours. While Plaintiffs were compensated for their work during Scheduled Working Hours, they were not compensated for the work they were required and encouraged to do outside Scheduled Working Hours to successfully complete the Training Period, such as study time and homework.

PSEG's failure to compensate Plaintiffs for study time and homework during the Training Period outside Scheduled Working Hours violated the FLSA and the NY Wage Law. PSEG's policy and practice of failing to compensate employees for study time and homework outside Scheduled Working Hours during the Training Period justifies a collective action under the FLSA to compensate any similarly-

situated employee who was not paid for study time and homework during a training period since May 2015.

**PARTIES**

1.      Plaintiff Lisa Griffin is a resident of and domiciled in Englewood Cliffs, New Jersey.

2.      Plaintiff Tiffany Burton is a resident of and domiciled in Bayside, New York.

3.      Plaintiff Roselle Able is a resident of and domiciled in West Babylon, New York.

4.      Plaintiff Karen Renard is a resident of and domiciled in Wyandanch, New York.

5.      Defendant PSEG is a limited liability company formed pursuant to the New York Limited Liability Law.  It has no registered agent.  Its agent for service of process is the "C T Corporation System" at 111 Eighth Avenue, 13th Floor, in New York, New York 10011.

**SUBJECT MATTER JURISDICTION,
PERSONAL JURISDICTION, AND VENUE**

6.      Pursuant to 28 U.S.C. § 1331, 1367(a), and Fed.R.Civ.P. 4, the United States District Court for the Eastern District of New York has subject matter and personal jurisdiction over PSEG because this complaint arises under the FLSA and PSEG is located within the Eastern District of New York. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York because that is where PSEG resides.

3

## FACTUAL BACKGROUND

7.     In 2016 and 2017, Plaintiffs each individually applied for "associate customer service representative" positions with PSEG through PSEG's online portal.  The PSEG application process required Plaintiffs to participate in an online interview, attend a PSEG job fair and take another interview there, and to satisfactorily complete a "pre-placement test."

8.     After successfully completing the application process, each Plaintiff received a nearly-identical offer letter.  The only differences were the names of the recipient.

9.     For example, PSEG's June 13, 2017 offer letter to Ms. Griffin stated in part that Ms. Griffin was not exempt from overtime, that her initial "hourly wage" would be $17.69, her "tentative start date" was September 11, 2017, and that she had to complete two "mandatory enterprise-wide orientation programs."

10.     The "mandatory enterprise-wide orientation programs" were unrelated to the Training Period; one was an "e-learning program" about PSEG's "corporate structure" and the other was a class on affirmative action, equal employment opportunity, and diversity.

## I.     The Training Period

11.     Plaintiffs started their employment with PSEG on September 11, 2017 at 8:00am at 15 Park Drive in Melville, New York, known as the PSEG "customer service center."  On their first day of employment, they received a

calendar setting forth the Training Period and the four tests they had to satisfactorily complete to continue employment with PSEG. While the calendar refers to an 8:30am start time for each work day of the Training Period, the Training Period actually started each day at 8:00am and Plaintiffs (and their classmates) were required to be present at 8:00am each day.

12.    The calendar set exams on September 21, 2017 for "ELSCV Exam," on October 18, 2017 for "CAS Exam," on November 1, 2017 for "Collection Exam," and on December 8, 2017 for "Final Exam."

13.    On their first day of employment, Plaintiffs received a first "customer service" manual of approximately 580 pages.

14.    On approximately November 5, 2017, Plaintiffs received a second manual, which was approximately 510 pages.

15.    Both manuals were used during the Training Period to guide Plaintiffs (and their classmates) through the Training Period.

16.    The categories of information in the manuals corresponded with the topics of training on the calendars.

17.    For example, the calendar set September 13, 2017 as a day to train "account retrieval OMS." The topic "account retrieval OMS" is at the beginning of the first manual on page 21.

## II.    The Training Period classes

18.    There were approximately 26 employees overall in the Training Period.

5

19.    Because of the size of the class for the Training Period, PSEG split the class into two separate classes.

20.    Ms. Griffin and Ms. Burton were put into one class; Ms. Able and Ms. Renard were in another.

21.    Ms. Griffin's and Ms. Burton's class was led by a PSEG instructor named Michael Mclinden.

22.    Ms. Able and Ms. Renard's class was led by a PSEG instructor named Monica Morgan.

23.    Though Plaintiffs were in two separate classes for the Training Period, their experiences were essentially identical and the classes would meet together for "guest speakers."

24.    PSEG holds similar training periods three to four times a year and has done so since at least "Superstorm Sandy" in 2012 and probably since 2011 when PSEG was formed.  After "Superstorm Sandy," PSEG started a more aggressive hiring practice to improve its "JD Power" ranking and to meet the standards for call volume and customer service set by the State of New York.

### III.    Training Period homework

25.    Almost immediately after the Training Period started, PSEG's instructors began assigning homework to the Training Period classes to be completed outside Scheduled Working Hours.

26.    Some of this homework was assigned from exercises in the manuals; other homework assignments were separate from the manuals.[1] While the PSEG instructors would provide a small amount of class time for work on exercises, the class time invariably turned to a new subject and Plaintiffs (and their classmates) were required to complete the exercises after Scheduled Working Hours.

27.    For example, on or around November 1, 2017 Plaintiffs were assigned "ELBA Exercise A" as homework (the date appears at the top of the exercise).[2] That exercise does not appear in the manuals.

28.    As another example, on or around November 20, 2017 Plaintiffs were assigned a number of "Ratchet Exercises" as homework.  Those exercises do not appear in the manuals.

29.    The date of assignment of homework generally corresponded with the date of the topic on the calendars, though the schedule in the calendar was delayed at times for various reasons, including that Plaintiffs (and their classmates) were used to answer calls for PSEG.

30.    For example, the "Ratchet Exercises" are categorized as "Billing Components" on the assignment; on the calendar, the topic of "components of billing" is listed for the week of November 13-17, 2017, not November 20, 2017.

---

[1] Because PSEG may deem its manuals or the homework assignments "proprietary" in some way, the manuals and homework assignments are not recited verbatim in this complaint.

[2] Most exercises do not have a date at the top to approximate when it was assigned.

31.    Though Plaintiffs do not still possess all of the homework they were assigned, they possess over 200 pages of homework.

32.    Much of the homework required more-than-remedial mathematical calculations and review and understanding of terminology and jargon that would be indecipherable to anyone who just attempted the homework without any prior study or training.

33.    When a class was struggling with a particular topic, the PSEG instructor would assign additional homework exercises to work on the topic. For example, on approximately October 2, 2017 Ms. Able's and Ms. Renard's class was given additional exercises for homework on meter reading.

34.    PSEG instructors would call on class members to go over completed homework assignments.

35.    For example, a substitute instructor for PSEG named Gina Todd Walker told Ms. Renard one day in class, while going over homework, that "oh you're the slow one."

36.    The Training Period was extremely competitive and class members would often comment to one another about homework, mock each other for struggling with homework or the topics in general, and would text or email each other to provide the homework for a particular day if a class member had missed it.

37.    The commentary of the PSEG instructors and the competiveness of the Training Period highlighted the requirement and encouragement for

Plaintiffs (and their classmates) to complete homework and study outside Scheduled Working Hours.

38.    Of all the exercises Plaintiffs were required to complete during the Training Period, approximately 65%-80% were assigned as homework to be completed outside Scheduled Working Hours.

39.    The vast majority of class time during the Training Period was devoted to lectures and presentations, not to completion of exercises.

40.    Plaintiffs (and their classmates) received at least three homework assignments per week on average.

## IV.    Training Period study time

41.    From the outset of the Training Period, PSEG instructors impressed upon Plaintiffs (and their classmates) that the Training Period could not be successfully completed without devoting significant time outside Scheduled Working Hours to review and study.

42.    PSEG instructors and guest speakers made clear that the failure to study outside Scheduled Working Hours was a constant threat to successful completion of the Training Period and continued employment.

43.    PSEG Instructor Morgan told Ms. Able and Ms. Renard's class "you will have no life" during the Training Period.

44.    PSEG instructors brought in "guest speakers" from PSEG and from prior training periods to convey the importance of studying outside Scheduled

Working Hours. These "guest speakers" usually spoke to Plaintiffs' classes collectively.

45.    PSEG's director of its call center explained that a prior class created study groups to aid in review and study outside Scheduled Working Hours.

46.    PSEG's manager of customer service, Brian Murklee, told Plaintiffs to "give up your personal life." Mr. Murklee told Plaintiffs that there was a lot of opportunity at PSEG for overtime and promotion if Plaintiffs (and their classmates) put the work in during the Training Period.

47.    Fred Daum, PSEG's director of customer service, appeared more than once during the Training Period and told Plaintiffs (and their classmates) about the importance of studying outside Scheduled Working Hours.

48.    PSEG instructors brought in a PSEG union representative to tell Plaintiffs (and their classmates) to "study, study, study." The union representatives told Plaintiffs (and their classmates) that they related to Plaintiffs' stress during the Training Period because they understood the amount of work required and the amount of time that needed to be sacrificed outside of class.

49.    Following the requirements and encouragement of PSEG instructors, Ms. Griffin was routinely present at the Training Period location by around 6:30am, two hours before the start of class in order to "study, study,

10

study." Ms. Griffin was often joined by Ms. Renard around the same time in order to "study, study, study."

50.    For the same reason, Ms. Able was often present at the Training Period between 7:00am and 8:00am to study prior to the start time of class.

51.    In order to get in early to study before the start of class, Plaintiffs had to swipe-in with their time card.

52.    One morning when Ms. Able and Ms. Renard were studying prior to the start of class, PSEG instructor Morgan came up to them and asked, "studying?" Ms. Able responded affirmatively and PSEG instructor Morgan said "good, good, good."

53.    As would be expected, Plaintiffs' (and their classmates') study time substantially increased around exams during the Training Period.

54.    PSEG instructors assigned "review packets" around exams. These "review packets" were substantial and required significant cross-reference with the manuals.

55.    The "Full Rep Review Package" dated "December, 2017" is 35 pages long and contains over 100 questions.

56.    A November 2017 "Customer Relations Review" is approximately 40 pages long and contains a similar number of questions.

57.    In the lead-up to the final exam of the Training Period on December 13, 2017,[3] Ms. Burton's boyfriend made several comments to her about the length of time she spent studying for the exam, especially the preceding weekend of December 9-10, 2017, when she spent approximately 11 hours studying for the exam.  The weekend before that, December 2-3, 2017, Ms. Burton spent approximately 8 hours studying for the exam.

## V.    PSEG failed to pay Plaintiffs (and their classmates) for homework and study time outside Scheduled Working Hours

58.    While Plaintiffs received some overtime pay when they were required to handle calls for PSEG and consequently worked more than 40 hours in a week, PSEG did not pay any overtime to Plaintiffs (and their classmates) for homework and study time outside Scheduled Working Hours.

59.    Plaintiffs were paid $17.69 an hour until November 14, 2017, when their pay was increased to $18.22.

60.    The following is a week-by-week breakdown of Ms. Griffin's hours spent on study time and homework outside Scheduled Working Hours beyond 40 hours in a week and the overtime PSEG should have paid her.  Lunch time and daily breaks during Scheduled Working Hours are subtracted from this breakdown.  The weeks correspond with the weeks on the calendar for the Training Period.

---

[3] The calendars list the final exam on December 8, 2017.  For various reasons, including a storm that required Plaintiffs to handle calls for PSEG, the exam was moved.

| Week | Hours | Rate ($ per hr) | OT Rate | OT Hours (lunch, breaktime adjusted) | Overtime |
|---|---|---|---|---|---|
| 1 | 23.75 | $17.69 | $26.54 | 16.25 | $431.19 |
| 2 | 23.75 | $17.69 | $26.54 | 16.25 | $431.19 |
| 3 | 31.00 | $17.69 | $26.54 | 23.50 | $623.57 |
| 4 | 34.75 | $17.69 | $26.54 | 27.25 | $723.08 |
| 5 | 32.25 | $17.69 | $26.54 | 24.75 | $656.74 |
| 6 | 32.00 | $17.69 | $26.54 | 24.50 | $650.11 |
| 7 | 30.50 | $17.69 | $26.54 | 23.00 | $610.31 |
| 8 | 31.75 | $17.69 | $26.54 | 24.25 | $643.47 |
| 9 | 24.50 | $17.69 | $26.54 | 17.00 | $451.10 |
| 10 | 31.25 | $18.22 | $27.33 | 23.75 | $649.09 |
| 11 | 23.50 | $18.22 | $27.33 | 16.00 | $437.28 |
| 12 | 26.75 | $18.22 | $27.33 | 19.25 | $526.10 |
| 13 | 29.25 | $18.22 | $27.33 | 21.75 | $594.43 |
| 14 | 21.50 | $18.22 | $27.33 | 17.00 | $464.61 |
| 15 | | $18.22 | $27.33 | 0.00 | $0.00 |
| Total Overtime | | | | | $7,892.27 |

61.    The following is the same breakdown for Ms. Burton.

| Week | Hours | Rate ($ per hr) | OT Rate | OT Hours (lunch, breaktime adjusted) | Overtime |
|---|---|---|---|---|---|
| 1 | 12.50 | $17.69 | $26.54 | 8.00 | $212.28 |
| 2 | 23.50 | $17.69 | $26.54 | 16.00 | $424.56 |
| 3 | 31.50 | $17.69 | $26.54 | 24.00 | $636.84 |
| 4 | 32.50 | $17.69 | $26.54 | 25.00 | $663.38 |
| 5 | 35.50 | $17.69 | $26.54 | 28.00 | $742.98 |
| 6 | 35.00 | $17.69 | $26.54 | 27.50 | $729.71 |
| 7 | 39.50 | $17.69 | $26.54 | 32.00 | $849.12 |
| 8 | 28.00 | $17.69 | $26.54 | 20.50 | $543.97 |
| 9 | 14.50 | $17.69 | $26.54 | 7.00 | $185.75 |
| 10 | 34.50 | $18.22 | $27.33 | 27.00 | $737.91 |
| 11 | 23.00 | $18.22 | $27.33 | 15.50 | $423.62 |
| 12 | 37.50 | $18.22 | $27.33 | 30.00 | $819.90 |
| 13 | 54.50 | $18.22 | $27.33 | 47.00 | $1,284.51 |
| 14 | 30.00 | $18.22 | $27.33 | 27.00 | $737.91 |

| | | | | | |
|---|---|---|---|---|---|
| 15 | | $18.22 | $27.33 | 0.00 | $0.00 |
| **Total Overtime** | | | | | **$8,992.43** |

62.    The following is the same breakdown for Ms. Able.

| Week | Hours | Rate ($ per hr) | OT Rate | OT Hours (lunch, breaktime adjusted) | Overtime |
|---|---|---|---|---|---|
| 1 | 21.00 | $17.69 | $26.54 | 15.00 | $398.03 |
| 2 | 35.50 | $17.69 | $26.54 | 28.00 | $742.98 |
| 3 | 33.50 | $17.69 | $26.54 | 26.00 | $689.91 |
| 4 | 35.50 | $17.69 | $26.54 | 28.00 | $742.98 |
| 5 | 32.50 | $17.69 | $26.54 | 25.00 | $663.38 |
| 6 | 34.50 | $17.69 | $26.54 | 27.00 | $716.45 |
| 7 | 36.50 | $17.69 | $26.54 | 29.00 | $769.52 |
| 8 | 35.50 | $17.69 | $26.54 | 28.00 | $742.98 |
| 9 | 36.50 | $17.69 | $26.54 | 29.00 | $769.52 |
| 10 | 35.50 | $18.22 | $27.33 | 28.00 | $765.24 |
| 11 | 37.50 | $18.22 | $27.33 | 30.00 | $819.90 |
| 12 | 34.50 | $18.22 | $27.33 | 27.00 | $737.91 |
| 13 | 37.50 | $18.22 | $27.33 | 30.00 | $819.90 |
| 14 | 16.00 | $18.22 | $27.33 | 13.00 | $355.29 |
| 15 | | $18.22 | $27.33 | 0.00 | $0.00 |
| **Total Overtime** | | | | | **$9,733.97** |

63.    The following is the same breakdown for Ms. Renard.

| Week | Hours | Rate ($ per hr) | OT Rate | OT Hours (lunch, breaktime adjusted) | Overtime |
|---|---|---|---|---|---|
| 1 | 21.00 | $17.69 | $26.54 | 15.00 | $398.03 |
| 2 | 33.50 | $17.69 | $26.54 | 26.00 | $689.91 |
| 3 | 33.50 | $17.69 | $26.54 | 26.00 | $689.91 |
| 4 | 34.50 | $17.69 | $26.54 | 27.00 | $716.45 |
| 5 | 40.50 | $17.69 | $26.54 | 33.00 | $875.66 |
| 6 | 38.50 | $17.69 | $26.54 | 31.00 | $822.59 |
| 7 | 44.50 | $17.69 | $26.54 | 37.00 | $981.80 |

14

| | | | | | |
|---|---|---|---|---|---|
| 8 | 41.50 | $17.69 | $26.54 | 34.00 | $902.19 |
| 9 | 36.50 | $17.69 | $26.54 | 29.00 | $769.52 |
| 10 | 38.50 | $18.22 | $27.33 | 31.00 | $847.23 |
| 11 | 26.00 | $18.22 | $27.33 | 18.50 | $505.61 |
| 12 | 40.50 | $18.22 | $27.33 | 33.00 | $901.89 |
| 13 | 46.50 | $18.22 | $27.33 | 39.00 | $1,065.87 |
| 14 | 21.00 | $18.22 | $27.33 | 18.00 | $491.94 |
| 15 | | $18.22 | $27.33 | 0.00 | $0.00 |
| Total Overtime | | | | | $10,658.57 |

64.    Other class members from the Training Period have similar breakdowns, with at least 10 to 25 hours per week on homework and study time.

## COUNT ONE
## OVERTIME UNDER FAIR LABOR STANDARDS ACT
### (29 U.S.C. § 201, et seq.)

65.    Plaintiffs incorporate paragraphs 1 through 64 of this complaint as if fully set forth in this count.

66.    PSEG is an "employer" under the FLSA.

67.    During the Training Period, the FLSA required PSEG to pay Plaintiffs 1.5 times their regular rate of pay for each hour worked "in excess of 40 hours in any week."

68.    The FLSA defines "employ" as "to suffer or permit to work."

69.    In a January 15, 2009 opinion letter under the FLSA, the Wage and Hour Division of the United States Department of Labor stated that "all time spent studying" for "required training programs" is "compensable."

70.    This opinion letter is consistent with and was based on 29 C.F.R. § 785.27 to 785.32.

15

71.    29 C.F.R. § 785.27 states:

Participation in training programs need not be counted as working time if all of the following criteria are met:

> a. Attendance is outside of the employee's regular working hours;
> b. Attendance is in fact voluntary;
> c. The course, lecture, or meeting is not directly related to the employee's job;
> d. The employee does not perform any productive work during such attendance.

29 C.F.R. § 785.27 is conjunctive. As explained in the opinion letter, each element must be met in order for homework and study time *to be exempt* from the requirement to pay overtime. Only one element is met here— Plaintiffs' study time and homework was outside of Scheduled Working Hours. The other elements are not met.

72.    29 C.F.R. § 785.28 states that:

Attendance is not voluntary, of course, if it is required by the employer. It is not voluntary in fact if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by non-attendance.

73.    PSEG and its instructors required Plaintiffs (and their classmates) to complete homework and engage in substantial study time outside Scheduled Working Hours. PSEG and its instructors required this expressly through statements during the Training Period and through the use of "guest speakers."

74.    Plaintiffs (and their classmates) were certainly "led to believe that" their "present working conditions...would be adversely affected by" failure to complete the homework and study outside Scheduled Working Hours. For example,

PSEG representatives told class members during the Training Period that "you will have no life," to "give up your life," and to "study, study, study."

75.    29 C.F.R. § 785.29 states that "[t]he training is directly related to the employee's job if it is designed to make the employee handle his job more effectively as distinguished from training him for another job, or to a new or additional skill." The entire purpose of the Training Period was to prepare Plaintiffs (and their classmates) to perform the job for which they were training, "associate customer service representative." By PSEG's design and definition, the Training Period was required for Plaintiffs to "handle [their] job" at all, let alone "more effectively."

76.    Plaintiffs performed "productive work" in their study time and when completing their homework. The study time and homework prepared Plaintiffs to handle calls for PSEG before the completion of the Training Period, let alone after the Training Period. PSEG directly benefited from Plaintiffs study time and completion of homework because it allowed PSEG to use Plaintiffs (and their classmates) for storms during the Training Period to handle emergency calls and even work the overtime for which Plaintiffs were actually compensated.

## COUNT TWO
### OVERTIME UNDER NEW YORK WAGE/HOUR LAW
### (N.Y. Comp. Codes R. & Regs. Tit. § 142.2.2)

77.    Plaintiffs incorporate paragraphs 1 through 76 as if fully set forth in this count.

78.    Pursuant to the NY Wage Law, the New York Commissioner of Labor has promulgated a "miscellaneous wage order" that incorporates the overtime requirements of the FLSA:

> An employer shall pay an employee for overtime at a wage rate of 1 ½ times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 *et seq.*, the Fair Labor Standards Act of 1938, as amended [29 USC §§ 207, 213]; provided, however, that the exemptions set forth in section 13(a)(2) and (a)(4) of such act shall not apply. In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to section 13(a)(2) and (a)(4) of such act, overtime at a wage rate of 1 ½ times the basic minimum hourly rate.

79.    Under the NY Wage Law and the "miscellaneous wage order," Plaintiffs are entitled to overtime in the same amount and for the same reasons as set forth in paragraphs 1 through 75 of this complaint.

<u>**COUNT THREE**</u>
**COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT**
**(29 U.S.C. § 216(b))**

80.    Plaintiffs incorporate paragraphs 1 through 79 on behalf of all similarly-situated employees of PSEG as if fully set forth in this count.

81.    The FLSA states that "an action...may be maintained against any employer...by any one or more employees for and in behalf of himself or themselves and other employees similarly situated..."

82.    The class members in Plaintiffs' Training Period are all similarly-situated under the FLSA. They were all training for the same position, took the same tests, were required to complete the same homework, were instructed that it was necessary to study outside Scheduled Working Hours in order to successfully

complete the Training Period, and they did not receive overtime for homework and study time.

83.    PSEG has conducted a training period similar to the one taken by Plaintiffs since at least 2011 or 2012, as evidenced by PSEG's use of "guest speakers" during the Training Period.

84.    Class members from prior training periods at PSEG are similarly-situated to Plaintiffs under the FLSA for the same reasons that class members with Plaintiffs in their Training Period are similarly-situated.

85.    PSEG's failure to pay overtime for homework and study time during the Training Period, and during all prior training periods, was part of a collective policy or plan, as evidenced by the PSEG instructors themselves, the homework assignments, and the training manuals.

## **DEMAND FOR RELIEF**

Pursuant to counts one and two of this complaint, Plaintiffs demand relief as follows:

(a)    Past due overtime for three years from the date of this complaint for PSEG's knowing and willful violation of the FLSA

(b)    Past due overtime for two years from the date of this complaint under the FLSA and six years under the NY Wage Law in an amount of not less than $7,892.27 for Ms. Griffin, $9,733.97 for Ms. Able, $10,658.57 for Ms. Renard, and $8,992.43 for Ms. Burton

(c)     Liquidated damages to each Plaintiff under the FLSA and the NY Wage Law equal to the overtime due to each Plaintiff

(d)     Attorneys' fees under the FLSA and the NY Wage Law

(e)     Pre and post-judgment interest on all past due overtime and liquidated damages.

Pursuant to count three of the complaint, Plaintiffs and similarly-situated class members demand relief as follows:

(a)     Collective action certification under the FLSA

(b)     An order requiring PSEG to produce the names and mailing addresses of any employee who participated in the Training Period or any prior training period since May 2011

(c)     An order authorizing Plaintiffs to serve all potential class members of the FLSA collective action with a Court-approved "opt-in" notice and requiring PSEG to place such notice in class members' paychecks (if they are still employees of PSEG) for a period of not less than two months.

Dated: May 22, 2018

_____
JUSTIN D. SANTAGATA, ESQ.

**JURY DEMAND**

Pursuant to Fed.R.Civ.P. 37, Plaintiffs demand trial by jury.

_____
JUSTIN D. SANTAGATA, ESQ.

**TRIAL COUNSEL DESIGNATION**

Justin D. Santagata, Esq. is hereby designated as trial counsel.

_____
JUSTIN D. SANTAGATA, ESQ.